IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:13CV82-RLV

| | |
|---|---|
| WILLIAM GERALD PRICE, )<br>　　　　Plaintiff, )<br>　　　　　　　　　　　　　　　　　)<br>　　v. 　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　　)<br>DIANE C. DEAL, individually, and in )<br>her official capacity as Clerk of Watauga )<br>County Court, )<br>MICHAEL VETRO, SR., )<br>JOSEPH THOMPSON, IV, )<br>AMANDA K. MOORE, )<br>CHRISTINA C. HUGHART, )<br>JAMES D. WILLIAMS, )<br>RANDY M. LEWIS, and )<br>JERRY D. LEWIS, )<br>　　　　Defendants. )<br>_____) | MEMORANDUM and ORDER |

**THIS MATTER** is before the Court upon multiple Rule 12 Motions filed by the Defendants. Defendant Diane C. Deal ("Deal") moves for dismissal based upon lack of subject matter jurisdiction and insufficiency of service of process / lack of personal jurisdiction with respect to the individual capacity claim. (Docs. 13, 14). Defendant Michael Vetro, Sr. ("Vetro"), moves for dismissal based upon the doctrine of judicial immunity. (Docs. 18, 19). Defendants Jerry D. Lewis ("J. Lewis"), Randy M. Lewis ("R. Lewis"), and James D. Williams ("Williams") jointly move for dismissal alleging lack of subject matter jurisdiction and insufficiency of service of process / lack of personal jurisdiction for purposes of individual capacity claims against Jerry and Randy Lewis. (Docs. 21, 22). Defendants Christina C. Hughart, Amanda K. Moore, and Joseph Thompson, IV, jointly move for judgment on the pleadings and likewise assert that subject matter jurisdiction does not exist. (Docs. 26, 27).

While not always captioned as a "Response," Plaintiff Price has responded to the above-referenced motions.[1]

## I. Nature of Case

This lawsuit stems from Plaintiff's dissatisfaction with the outcome of special proceedings that resulted in Plaintiff's vehicle being repossessed.

In June 2012, CitiFinancial filed suit against William Gerald Price ("Price"), an Ashe County resident, in the District Court Division of the General Court of Justice for Watauga County, North Carolina, alleging that Price had defaulted on his car loan. (Doc. 27 / Exh. 1 − *See CitiFinancial Auto v. William Gerald Price*, 12CVD401 (Watauga County) (the "Repossession Action"). In connection with the alleged default, CitiFinancial retained the law firm of Rogers, Townsend & Thomas, PC, to represent its interests.

According to the verified Complaint submitted in state court on CitiFinancial's behalf, Defendant CitiFinancial was the lender on Price's automobile loan. On December 26, 2007, Price and CitiFinancial executed a Retail Installment Sale or Credit Sale Contract to finance the purchase of a 2007 Toyota Camry, VIN 4T1BK46K87U555764. (Doc. 27 / Exh. 1). Price applied for and obtained his car loan in the amount of $21,852.51 via telephone. (Doc. 27 / Exh. 3, Padilla Aff. ¶ 3). To secure the performance of the terms of the loan, Price granted CitiFinancial a purchase money security interest in his car. (Doc. 27 / Exh. 1, ¶¶ 3, 4). CitiFinancial perfected its security interest by recording its lien on the Certificate of Title filed

---

[1] For example, what appears in substance to be Plaintiff's Response to Deal's Motion to Dismiss for Lack of Jurisdiction is entitled "Motion for Partial Summary Judgment as to all matters concerning Defendant Diane C. Deal." (Docs. 16, 17). Plaintiff also moved to strike certain of these dispositive motions. (Docs. 28, 31, 38). Plaintiff's motions to strike did not satisfy the Rule 12(f) criteria and, therefore, were previously denied without prejudice. Finally, on May 28, 2014, Price filed a document entitled, "Plaintiff's; Objection To Rule 11. Sanctions, and Motion to Recall Orders 42, and Order #59, and Order #63 . . . and Judicial Notice . . . ." (Doc. 64).

with the North Carolina Division of Motor Vehicles. (Doc. 27 / Exh. 1, ¶ 5). Accordingly, CitiFinancial held title to the vehicle pending satisfaction of the debt. (Repossession Action Complaint / Exh. 2). CitiFinancial alleged that Mr. Price defaulted under the payment provisions of the contract and, therefore, sought to recover all monies including principal, interest and attorneys' fees to which it was entitled to under the contract. (Doc. 27 / Defs.' Mem. In Supp., 4–5 / Exh. 1).[2] CitiFinancial, acting through counsel and holder of a limited power of attorney and servicer of the loan, Santander Consumer USA, Inc., asserted that Price had not made any payment since February 2012 and that the principal sum owed was $13,706.70.[3] (Doc. 27 / Padilla Aff., ¶ 8, Exh. 2 – Itemized Statement / Payment History; Repossession Action Summary Judgment Hr'g Tr. at 8, 10–11).

Notably, the Repossession Action Complaint alleged that "*[u]pon information and belief*, Defendant[Price] is a citizen and resident of Watauga County, North Carolina." (Doc. 27 / Exh. 1, ¶ 2) (emphasis added). Likewise, the underlying Complaint alleged "*[u]pon information and belief*, the Property which is the subject of this civil action is located in Watauga County, North Carolina." (Id.)

As a result of the Repossession Action, an Order for Seizure in Claim and Delivery ("Claim and Delivery Order") (Amended) issued by Defendant Deal, in her capacity as Watauga County Clerk of Superior Court. (Compl., ¶ 39) (Exh., 105). The Claim and Delivery Order

---

[2] As of the date of the briefing on the instant motions, the underlying Repossession Action was set for trial in Watauga County District Court in September 2013 but no party has confirmed that trial occurred as scheduled.

[3] According to CitiFinancial, the $13,706.70 figure represents $12,800.49 in principal plus $857.21 in interest plus $24 in late fees and $25 in miscellaneous fees.

directed the Ashe County Sheriff's Department to take possession of Price's vehicle and deliver it to CitiFinancial Auto.[4]

On or about August 21, 2012, the Order issued by the Clerk of Court was sent to the Watauga County Sheriff's Department. (Compl., ¶ 24). The Sheriff's Department returned the Order to the Clerk of Court in Watauga County (Deal) because Price was living in Ashe County. (Compl., ¶ 25).

On or around October 1, 2012, Plaintiff received a phone call from "the head County Sheriff of Ashe County," Defendant James Williams, that the Sheriff's Department of Ashe County received notification from Defendant Diane Deal, Clerk of Court, Watauga County, to repossess Price's 2007 Toyota Camry. (Compl., ¶ 39). Price immediately objected and argued that Watauga County had no venue or jurisdiction over the matter. (Compl., ¶¶ 39–40). Price alleges that Deal was indifferent to his complaint concerning "lack of territorial jurisdiction." (Compl., ¶¶ 21–22).

Plaintiff Price was directed to appear in court for proceedings on October 15, 2012, before The Honorable Judge Theodore W. McEntire, in the North Carolina General Court of Justice, Civil Division, Watauga County.[5] *See* 12CVD401 (Compl., ¶ 26). The purpose of the October 15, 2012 hearing was to provide opportunity for the parties to be heard on the merits of CitiFinancial's summary judgment motion. Judge McEntire declined to grant summary

---

[4] The Claim and Delivery Order read in part:

To the Sheriff of ASHE County:
The plaintiff [CitiFinancial Auto] is entitled to immediate possession of the property [2007 Toyota Camry] listed below. . . . You are ORDERED to take the described property from the defendant [William Gerald Price] and deliver it to [CitiFinancial Auto] after you have been satisfied that [CitiFinancial Auto] has executed a sufficient bond.

[5] The spelling within Plaintiff's Complaint is "Mcentire." The Court's spelling is consistent with the underlying state court record. (Doc. 22 / Exh. 1).

judgment. (10/15/12 Hr'g Tr. 46−61, 67). Plaintiff's Complaint alleged that the Clerk's decision granting summary judgment in favor of CitiFinancial was "reversed" by Judge McEntire. (Compl., ¶¶ 27−28).

Pursuant to court order, the parties to the Repossession Action were directed to attend non-binding arbitration. *See* N.C. Gen. Stat. § 7A−37.1; Rules 5 & 6 of the Rules for Court-Ordered Arbitration. The Notice of Arbitration Hearing ("Notice"), which was issued prior to October 15th hearing before Judge McEntire, set the arbitration hearing date as October 16, 2012. (Doc. 19 / Exh. A). The Notice designated Defendant Michael Vetro, Sr. ("Vetro") as the appointed arbitrator. (Doc. 19 / Exh. A).

On October 16, 2012, the arbitration hearing convened with Defendant Vetro presiding over the proceedings. Plaintiff did not attend. According to Plaintiff, he was under the impression that the arbitration hearing would not be necessary in light of an oral ruling issued from the bench the day prior denying CitiFinancial's motion for summary judgment. (Compl., ¶ 32; Doc. 19 / Exh. D). In Price's absence, Defendant Vetro issued an Arbitration Award and Judgment in favor of CitiFinancial. (Doc. 19 / Exh. B).

Approximately ten days later, on or around October 26, 2012, Price's car, a 2007 Toyota Camry, was removed from his home located at 300 Bronze Turkey Lane, Creston, North Carolina by Defendants J. Lewis and R. Lewis. (Compl., ¶¶ 41−43).

On November 7, 2012, Price filed a "Motion to Set Aside Arbitration Award." (Doc. 19 / Exh. C). In his motion, Price explained the bases for his confusion about his need to attend and participate in the arbitration. In short, Price considered arbitration and trial to be mutually exclusive and interpreted the trial court's decision that the case would proceed to trial (as opposed to being decided as a matter of law at summary judgment pursuant to Rule 56), to mean

that the arbitration hearing was cancelled.  On November 15, 2012, Chief Judge Alexander Lyerly granted Price's motion and entered an "Order Setting Aside Arbitration Award and Judgment."  (Id. / Exh. E).  Chief Judge Lyerly noted in the Order that Price "failed to appear for [the] hearing due to the fact that the case was ordered to be set for trial in District Court." (Def.'s Mem. In Supp., 3).  Beyond successfully seeking to set aside the Arbitration Award in favor of CitiFinancial, Plaintiff did not pursue any additional relief in the state court.

Price commenced litigation in this federal district court on May 30, 2013 with the filing of his "COMPLAINT FOR MONEY DAMAGES AND DEPRIVATION OF RIGHTS UNDER 42 U.S.C. §§ 1983, 1985, 1986, 1988."  (Doc. 1 / Compl.).  Price identified his first four causes of action as violations of 42 U.S.C. § 1983, and labeled each as "Disparaging the protections of the Federal and State[']s Constitution" (COUNTs I – IV).  Price also asserted a § 1983 claim based upon an alleged unreasonable seizure of Plaintiff's property (COUNT V).  In Plaintiff's own words, his lawsuit was brought against:

> "State Officials acting under color of STATE Law and other Parties related to the unlawful taking pursuant to the 5th amendment, of Plaintiff's 2007 Toyota Camry for civil rights violations involving, grand theft, criminal trespass, and Lack of territorial jurisdiction, and the unlawful taking of private property, for public use, without just compensation."

(Compl., 2). Within the body of his Complaint, Plaintiff further alleges criminal conspiracy and treason, claiming that Defendants "act[ed] in concert under the color of North Carolina Law and outside the scope of their jurisdiction and authority" to his detriment, "violated clearly established law," and constitutional rights protected by the "4th, 5th, 6th, 7th, 9th, and 14th Amendments."[6]  (Compl., 2−3).  Price brings suit against Defendants in their *individual and official capacities*.  In addition, Price requests a jury trial and seeks damages against each

---

[6] As stated by the Sheriff Defendants, the Fifth, Sixth, Seventh, and Ninth Amendments "are plainly not implicated by the alleged facts . . . ."  (Defs'. Mem. In Supp., 10).

Defendant in the amount of $1,500,000, plus punitive damages, attorneys' fees pursuant to 42 U.S.C. § 1988, "all costs and disbursements of this action," "the right to amend [his] complaint as warranted by further evidence and fact finding," and a declaratory judgment requiring "all Defendants to have separate counsel, in order to avoid any conflict of interest." (Compl., 14−16).

Notwithstanding the characterization of his claims, the essence of Price's federal lawsuit is that the Repossession Action was a "bogus" or "sham" proceeding and that the events leading to the repossession of his vehicle were orchestrated by the Defendant group (in conspiratorial fashion) for that purpose. Price takes issue with the lawfulness of the Repossession Action itself, as well as the fact that CitiFinancial brought the Repossession Action in a county that was not his county of residence.

## II.     Standard of Review

The plaintiff has the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647−50 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768−69 (4th Cir. 1991)). When the factual predicate of subject matter jurisdiction is challenged, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768−69 (citations omitted); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Similar to a motion for summary judgment, the non-moving party must set forth specific facts beyond the pleadings to show that a genuine issue of fact exists. *Id*. Thus, dismissal pursuant to Rule 12(b)(1) is

warranted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*.

Finally, while "obliged to construe liberally the allegations of a *pro se* complaint, [the Court is] not required to credit outlandish conspiracy theories simply because a plaintiff does not have a lawyer." *Stratton v. Mecklenburg County Dep't. of Social Servs.*, 521 Fed. Appx. 278, 288, 2013 WL 2364587, *7 (4th Cir. 2013) (citing *Weller v. Dep't. of Social Servs.*, 901 F.2d 387, 390−91 (4th Cir. 1990)) (plaintiffs' allegations against defendants "relate directly to and are inextricably intertwined" with the state courts' judicial determination concerning parental rights).

### III. Subject Matter Jurisdiction

Because Plaintiff Price challenges the Repossession Action, the preeminent legal issue is whether federal subject matter jurisdiction exists over Plaintiff's claims. There are two doctrinal bodies of law relied upon in support of certain Defendants' contention that subject matter jurisdiction is absent − the *Rooker–Feldman* Doctrine and the Substantiality Doctrine.

As an initial matter, the Court properly takes judicial notice of the underlying civil proceeding in Watauga County referred to herein as the Repossession Action. (Doc. 22 / Exh. 1).

#### A. The *Rooker–Feldman* Doctrine

As explained by the Fourth Circuit Court of Appeals:

> Under the *Rooker–Feldman* doctrine, a "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." We regard the doctrine as jurisdictional. The notion that *Rooker–Feldman* is jurisdictional "rests on two basic propositions of federal jurisdiction." One is that "Congress . . . vested the authority to review state court judgments in the United States Supreme Court alone" under 28 U.S.C. § 1257(a). The other is that "Congress has empowered the federal district courts to exercise only original jurisdiction." The *Rooker–Feldman* doctrine, therefore, preserves a fundamental tenet in our system of federalism that

> . . . appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court. A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, "amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court. ***For purposes of Rooker–Feldman, "[t]he controlling question ... is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision."***

*American Reliable Ins. Co. v. Stilwell*, 336 F.3d 311, 316 (4th Cir. 2003) (emphasis added) (internal citations omitted).

### B. The Substantiality Doctrine

"Federal jurisdiction requires that a party assert a *substantial* federal claim." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (quoting *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) and *Hagans v. Lavine*, 415 U.S. 528, 536 (1974)) (emphasis added). The "substantiality doctrine" pronounced as law by the Supreme Court in *Hagans v. Lavine* was more recently explained by the Fourth Circuit as follows:

> Over the years, this court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are so attenuated and insubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion.

*Lavern*, 190 F.3d at 654. n. 10 (quoting *Davis*, 856 F.2d at 650–61) (internal citation and quotation marks omitted). "The *Hagans* doctrine of substantiality is especially important where a wholly frivolous federal claim serves as a pretext to allow a state-law issue, the real focus of the claim, to be litigated in the federal system." *Lovern*, 190 F.3d at 655 (citing *Davis*, 856 F.2d at 650–51); *see also Stratton v. Mecklenburg County Dep't. of Social Servs.*, 521 Fed. Appx. 278, 289, 2013 WL 2364587, *9 (4th Cir. 2013). Of particular import here is the warning that:

> "[F]ederal courts must guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state-law claim adjudicated in the federal system; Article III of the Constitution forbids this practice."

*Lovern*, 190 F.3d at 655 (internal citations omitted). In *Lovern*, although the plaintiff alleged constitutional claims, namely, violation of his First Amendment speech and Fourteenth Amendment substantive due process rights, the court observed that the purported violations flow from the adverse state ruling, in which case plaintiff's remedy is to pursue appropriate state process. *Lovern*, 190 F.3d at 655, n. 11.

### C. The Factual Allegations Within Plaintiff's Complaint Do Not Impart Federal Subject Matter Jurisdiction

Taking the facts as alleged by Plaintiff, and permitting all reasonable inferences in Plaintiff's favor, the Court finds that much of what is alleged within Plaintiff's lawsuit is barred by both the *Rooker–Feldman* and Substantiality Doctrines.[7] As the Complaint expressly states, Plaintiff, in fact, seeks to have this federal court review the legalities of the Repossession Action. "*Rooker–Feldman* . . . applies when a state-court litigant sues in federal district court to readjudicate the same issues decided in the state court proceedings." *American Reliable Ins. Co.*, 336 F.3d at 317 (internal citation and quotation marks omitted). Such is the case here. After the Claim and Delivery Order issued, Plaintiff's remedy was to post a bond and seek to recover his automobile pursuant to N.C. Gen. Stat. § 1−478. The record before the Court reveals that Plaintiff elected not to pursue this avenue of relief. (Exh. / Repo Action, 62). According to the Sheriff Defendants, another avenue of relief available to Plaintiff was to seek redress from the Watauga County District Court for the allegedly invalid seizure. (Doc. 22, 5). Instead, Plaintiff chose to pursue redress in this federal district court.

---

[7] Defendant Deal and the Sheriff Defendants contend that the *Rooker–Feldman* doctrine precludes Plaintiff's lawsuit. The Sheriff Defendants also argue that the Substantiality doctrine bars Plaintiff's suit.

Similarly, while Price contends that his constitutional rights were violated in a number of different ways, all of the purported violations Price complains of necessarily flow from the adverse state ruling. Each one of Price's claims attack Defendants' respective roles in the state court special proceeding. For example, Plaintiff asserts that the Sheriff Defendants acted in violation of the Fourth Amendment by unreasonably seizing his 2007 Toyota Camry as directed via the Claim and Delivery Order. (*See, infra,* "Section IV, E."). Absent the Repossession Action and Claim and Delivery Order, Price would have no complaint against the Sheriff Defendants. The same is true with respect to Defendant Deal. (*See, infra,* "Section IV, B."). Similarly, Price seeks to attack the state court's arbitration award, since vacated, by way of this federal lawsuit. Plaintiff contends that the court-appointed arbitrator presided over an "ex parte" arbitration hearing. (Compl., ¶ 31). However, the Notice of the Arbitration Hearing is in the record. Significantly, Price does not assert that he failed to receive notice or that he was unaware.[8] The fact that Price chose not to attend does not render the hearing "ex parte." There are no procedural irregularities that have not already been cured in the state court.[9] In short, under *Hagans* and its progeny, Price's lawsuit alleging violations of the U.S. Constitution for consequences flowing from the Repossession Action is merely a pretext for readjudicating a state court matter. *See Lovern*, 190 F.3d at 655; *Stratton*, 521 Fed. Appx. at 289, 2013 WL 2364587, *9. Article III forbids this practice. *Lovern*, 190 F.3d at 655 (internal citations omitted).

---

[8] It is true that the Notice of Arbitration Hearing issued prior to the October 15, 2012 summary judgment hearing and prior to the oral ruling of Judge Mcentire that apparently befuddled Plaintiff.

[9] This is demonstrated by the fact that once Price moved to set aside the arbitration award, explaining his misunderstanding, the arbitration award was set aside.

For these reasons, the Court finds that Plaintiff's claims challenging the merits of the Repossession Action are not properly before this federal court and are subject to dismissal for lack of subject matter jurisdiction.

### IV. Alternative Bases For Dismissal Specific To Individual Defendants Or Defendant Groups

#### A. Standard of Review / Rule 12(b)(6) and Rule 12(c)[10]

A Rule 12(b)(6) motion tests the legal and factual sufficiency of a complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). In reviewing a motion made under this rule, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), seen in the "light most favorable to the plaintiff." *Schatz v. Rosenberg*, 943 F.3d 485, 489 (4th Cir. 1991). However, the court is not bound to accept legal conclusions asserted by plaintiffs when reviewing such a motion. *Id*. A complaint must plead facts sufficient "to raise a right to relief above the speculative level" and to satisfy the court that the claim is facially plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 129 S.Ct 1937, 1949 (2009). A sufficient pleading must provide more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Papasan v. Allain*, 478 U.S. 265, 268 (1986).

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but early enough not to delay trial a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is reviewed under a standard similar to that which is used in Rule 12(b)(6) motions to dismiss, with the "key difference being that on a 12(c) motion, the court is to

---

[10] Certain Defendants only seek dismissal pursuant to Rule 12(b)(6) or 12(c). To the extent subject matter jurisdiction exists as to Plaintiff's claims against these Defendants, the Court will briefly address the other grounds which support dismissal.

consider the answer as well as the complaint." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations removed); *see also* Fed. R. Civ. P. 10(c); *Taylor v. Hobbs*, No. 5:11 CT 3100 D, 2012 WL 4486272 at *1 (E.D.N.C. Sept. 28, 2012) (noting that in addition to the answer, the court should also consider any documents attached to the pleadings or incorporated by reference and any matters of which the court may take judicial notice).

### B. Diane C. Deal, Clerk of Court, Watauga County

Diane C. Deal ("Deal") is the duly elected Clerk of Superior Court for Watauga County, North Carolina. Plaintiff contends that Deal − a Watauga County elected official and state judicial official − should not have issued the Claim and Delivery Order since Watauga County was not the proper venue. This is the sole factual allegation directed towards Deal.

Plaintiff's claims against the Watauga County Clerk are subject to dismissal on numerous legal grounds. First, Deal is protected by the Eleventh Amendment from any action to recover monetary damages brought against her in her official capacity. Next, Deal challenges the sufficiency of service of process pursuant to N.C. GEN. STAT. § 1A-1, Rule 4(j)(4) as well as Rules 4(e) and 4(j) of the Federal Rules of Civil Procedure. Insufficiency of service of process provides an alternative basis for dismissal as to Price's individual capacity claim against Deal. *See* Fed. R. Civ. P. 12(b)(2) and (b)(5).

Moreover, when presiding over special proceedings, Deal acts as a judicial officer and is entitled to quasi-judicial immunity. *See* N.C. GEN. STAT. 7A−40 (clerk of court is a judicial officer of the superior court division when presiding over special proceedings); *Ross v. Baron*, 493 Fed. Appx. 405, 406 (4th Cir. 2012) ("[A] court clerk is generally entitled to quasi-judicial immunity.") (citing *Briscoe v. LaHue*, 460 U.S. 325, 334−35 (1983)). In this case, as long as Deal served in a judicial capacity and did not act without jurisdictional authority in issuing the

Claim and Delivery Order, Plaintiff's official capacity claim for monetary damages against Deal must be dismissed. *See McCray v. Maryland*, 456 F.2d 1, 3−4 (4th Cir. 1972) (explaining the parameters of quasi-judicial immunity). Here, despite Plaintiff's contention to the contrary, Deal did not act without jurisdictional authority.[11] Therefore, Plaintiff's claim against Deal is also barred by quasi-judicial immunity.

### C. Michael Vetro, Sr., Court-Appointed Arbitrator

Similarly, judicial immunity bars Plaintiff's claims with respect to Michael Vetro, Sr. ("Vetro"), the court-appointed arbitrator in the underlying Repossession Action. North Carolina statutory law, state rules governing arbitration proceedings in North Carolina, and the federal common law establish that arbitrators presiding over arbitration proceedings are protected by judicial immunity in the same manner a trial judge would be immune − shielded from civil liability for acts done in the exercise of a judicial function. *See* N.C. Gen. Stat. 7A−37.1(e) (2013) ("Arbitrators in this procedure [statewide court-ordered nonbinding arbitration in civil actions] shall have the same immunity as judges from civil liability for their official conduct."); Rule 9(f) of the Rules for Court-Ordered Arbitration in North Carolina; *Dalenko v. Collier*, 664 S.E.2d 425, 430 (N.C. App. 2008) (federal common law); *see also Mathis v. Goldberg*, 538 Fed. Appx. 310, 311 (4th Cir. 2013) (arbitrator immune from damages because he was acting in quasi-judicial capacity) (internal citations omitted) (unpublished). Judicial immunity is properly raised here in support of Defendant Vetro's Rule 12(b)(6) Motion to Dismiss. *See e.g., Ostrzenski v. Seigel*, 177 F.3d 245 (4th Cir. 1999) (quasi-judicial immunity found to be proper

---

[11] The Claim and Delivery Order stated on its face that it was to be served upon Price in Ashe County. There is no merit in Plaintiff's contention that Watauga County officials lacked the authority to issue the Claim and Delivery Order given that the North Carolina Court System is comprised of a statewide general court of justice. (Doc. 14 / Def.'s' Mem. In Supp., at 7−8). Moreover, as Deal further suggests, even if venue was improper in Watauga County, jurisdiction was not defeated. Id.

basis for dismissal of complaint alleging violation of 42 U.S.C. § 1983 pursuant to Fed. R. Civ. P. 12(b)(6)).  Because the only facts alleged within Plaintiff's Complaint concerning Vetro relate to his actions as court-appointed arbitrator, Plaintiff's claim against Vetro is precluded by judicial immunity.

### D. Counsel Representing CitiFinancial / Joseph Thompson, IV, Amanda K. Moore, and Christina C. Hughart

Each of the individual attorneys named within Price's Complaint worked for Rogers, Townsend & Thomas, PC, and were involved in pursuing CitiFinancial's contractual claim against Price.  Defendant Joseph Thompson, IV ("Thompson"), is the attorney who commenced the Repossession Action with the filing of the verified Complaint on June 27, 2012.  (Doc. 27 / Exh. 1).  Christina C. Hughart ("Hughart") appeared on behalf of CitiFinancial at the claim and delivery hearing on August 21, 2012 and the hearing on CitiFinancial's summary judgment motion.[12]  (Defs.' Mem. In Supp., 5).  Amanda K. Moore became involved following Hughart's contribution.  (Defs.' Mem. In Supp., 5).

The factual allegations made by Price against the Rogers, Townsend & Thomas, PC attorneys pertain solely to their participation as privately retained counsel in the legal representation of CitiFinancial.   Price contends that this group of defendants failed to follow various Codes of Ethics, and faults this defendant group for receiving monetary compensation for legal services rendered to CitiFinancial.  (Compl., ¶¶ 37, 47, 54).  Throughout the Complaint, Price asserts that private persons such as legal counsel for CitiFinancial were "acting under the [c]olor of North Carolina Law and outside the scope of their jurisdiction and authority." (Compl., ¶¶ 53, 56, 61, 65).  Although Plaintiff asserts that private counsel worked in

---

[12] Price contends that Hughart attended the arbitration hearing as well.  (Compl., 31).

conjunction with state actors, there is no factual basis that these Defendants acted *under color of state law* for purposes of a civil rights action pursuant to 42 U.S.C. § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 321 (1981) (public defender was not state actor, acting under color of state law, for purposes of Section 1983 claim by way of his representation of an accused in a state criminal prosecution); *United States v. Classic*, 313 U.S. 299, 326 (1941) (defining state actor for purposes of § 1983 action).

The Court also finds that the facts alleged fail to support Price's assertion that a conspiracy was formed as contemplated pursuant to 42 U.S.C. § 1985. Title 42, United States Code, Section 1985 creates a private right of action for an individual "injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States . . . ." 42 U.S.C. § 1985 (1980). Section 1985 provides for the recovery of damages for injury to the plaintiff caused by one or more of the conspirators. To summarize, Section 1985 addresses claims falling into three specific provisions entitled, (1) Preventing officer from performing duties; (2) Obstructing justice; intimidating party, witness, or juror; and (3) Depriving persons of rights or privileges. 42 U.S.C. § 1985. Section 1985(3) requires that the Defendants' actions be motivated by some racial or class-based discriminatory animus. *See generally, Alexander v. City of Greensboro*, 762 F.Supp.2d 764 (M.D.N.C. 2011). There is no allegation made by Plaintiff that he falls within any protected class for purposes of Section 1985(3). While Price's Complaint does not identify any particular aspect of Section 1985 that Defendants allegedly violated, presumably Price contends that justice was somehow obstructed in his state court case.[13] In the absence of a cognizable claim pursuant to 42 U.S.C. § 1985,

---

[13] Subsection (2) of 1985 reads:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the

Price's Section 1986 claim must likewise fail.[14] *See Trerice v. Summons*, 755 F.2d 1081, 1084 (4th Cir. 1985); *Davis v. Hudgins*, 896 F.Supp. 561, 571 (E.D. Va. 1995).

Therefore, even if subject matter jurisdiction was present, the Motion for Judgment on the Pleadings submitted by Defendants Thompson, Hughart, and Moore would be properly <u>granted</u>.

### E. Ashe County Sheriff Defendants / Sheriff James D. Williams and Deputies Randy M. Lewis and Jerry D. Lewis

Defendants James D. Williams, Randy M. Lewis, and Jerry D. Lewis are all employed with the Ashe County Sheriff's Department (collectively "Sheriff Defendants"). Williams is the

---

United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . .

[14] 42 U.S.C. § 1986 reads in pertinent part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . .

42 U.S.C. § 1986 (1981).

duly-elected Sheriff of Ashe County, North Carolina. Randy Lewis is a Sergeant and Jerry Lewis is a Detective. (Doc. 22 / Defs.' Mem. In Supp., 1).

Plaintiff Price's "official capacity" claims against these Sheriff Defendants amount to Price bringing suit against the Ashe County Sheriff's Office as a whole. *See Kentucky v. Graham*, 437 U.S. 159, 165−66 (1985). In addition, the facts alleged fail to support a claim that the Sheriff's Deputies (or any of the other named Defendants for that matter) were acting beyond the scope of their ordinary official duties and responsibilities such that an individual capacity claim would be cognizable.

Sergeant Randy Lewis and Detective Jerry Lewis were assigned to execute the Claim and Delivery Order and retrieve the 2007 Toyota Camry from Price. Price contends that these Defendants, acting as representatives of the Sheriff's Department of Ashe County, did not have a valid warrant or consent to authorize the taking of the 2007 Toyota Camry. Id., ¶¶ 42−43. However, "[t]he Fourth Amendment makes no reference to civil proceedings for the recovery of debts."[15] *United States v. Tyler*, 943 F.2d 420, 422 (4th Cir. 1991) (internal citation and quotation marks omitted).

V. Order

For the reasons stated herein, and as articulated more thoroughly within the memoranda supplied by the Defendants, the Court finds that this federal court does not have subject matter jurisdiction over the claims of the Plaintiff.

---

[15] The *Tyler* panel also cited *Fuentes v. Shevin* for the proposition that "an opportunity for a prior hearing obviates possible Fourth Amendment problems with replevin statutes." *Tyler*, 943 F.2d at 422 (citing *Fuentes v. Shevin,* 407 U.S. 67, 96 n. 32 (1972)).

**IT IS, THEREFORE, ORDERED THAT:**

1) Defendants' various Rule 12 motions are **GRANTED in that federal subject matter jurisdiction is not present**. (Docs. 13, 18, 21, 26). All remaining aspects of the Defendants' motions are rendered **MOOT** and **DENIED** as such.

2) Plaintiff's Complaint is to be **DISMISSED** in its entirety.

3) Plaintiff's most recent filing (Doc. 64) is not properly before the Court since subject matter jurisdiction is lacking. Accordingly, Plaintiff's objections are denied as <u>moot</u>.

Signed: July 17, 2014

Richard L. Voorhees
United States District Judge